By the Court — Bosworth, Ch. J.
The order of arrest was granted on sufficient affidavits. They establish the existence of a debt, and that it was fraudulently contracted.
It is sworn to in them, that the defendant represented that he was not'only solvent, but wealthy, and was the owner of the plantation and mine for which the machinery was intended, and on which it was to be used by him. That he described himself, on the written contract for the machinery, as “Antonio B. Fernandez, of Havanna, on the Island of Cuba.” That these and other representations stated to have been made, were false.
"While the defendant denies having made most of the alleged representations, he does not deny having represented that he was not only solvent, but wealthy, and he deposes that he then was, and now is, a man of means, perfectly solvent, and worth more than $80,000, over and. above his just debts and liabilities, and states of what his property consists, and that besides this, he yet has an interest in the house of Fernandez, SÍiemper & Go., of $61,500.
Alberto A. Fernandez specifies as property owned by the defendant, two houses in Marrianna, worth about $40,000, and an interest in the house of Fernandez, Shemper & Co., “represented by $61,500.” Dionisio Mantilla specifies property owned by the defendant, and states that “he has now an interest in said house, represented by 123 shares in total value of $61,500, and that he also owns property worth $40,000, or thereabouts,” evidently refering to the two houses in Marrianna.
These are the only affidavits which undertake to describe and identify the defendant’s property.
*668 Rudolph Seig, a confidential clerk in the house of Fernandez, Shemper & Co., deposes that it failed in October, 1859, for about $900,000. That this firm-was a joint stock company, and that a Mr. Rendon, at the time of the failure, secured a part of its liabilities, and that the defendant transferred all the shares he had to Rendon, and it was attempted to carry on the business in the name of H. Shemper & Co., and the defendant was excluded from all control or management. That the experiment resulted in the failure of Rendon, and in a final stoppage of the concern in the beginning of 1862, and that the shares in this firm are worth nothing. That the two houses in Marrianna, are mortgaged for nearly, if not their full value, and that if the defendant has any means they are hid away from his creditors. That Dionisio Mantilla is a man of no pecuniary responsibility whatever, and Albert A. Fernandez is not of lawful age to transact business.
This affidavit effectually meets those on behalf of the defendant, as to all of the property he pretends to own, which he so specifies, as to render it possible to contradict him directly, on such evidences of a man’s solvency as these papers, as a whole, present. I should not expect any one would sell to him, to the amount of $3,715, on credit. They show that the drafts he gave in exchange for his notes, would have been valueless if accepted. His statements as to his two houses at Marrianna and their value, and the extent of his interest in the house of Fernandez, Shemper & Co., and the affidavit of Seig in regard to them, justify a close criticism of the other portions of the defendant’s affidavit, and detract from the consideration which might otherwise be due to them. As the case stands, there is much reason to believe that there was no intent to pay for this machinery when it was ordered, and that the debt was fraudulently contracted. (Hennequin v. Naylor, 24 N. Y. R., 139.)
This case is totally unlike the Merchants' Bank of New Haven v. Dwight, (13 How. Pr., 366; and see 1 E. D. Smith, 261.) The plaintiffs have not lost their right to hold the *669 defendant to bail, by anything which occurred in taking the drafts which the drawees refused to accept.
The order should be affirmed, with $10 costs.